UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-11920-RWZ

ANTONIO BURGO

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of the Social Security Administration

MEMORANDUM OF DECISION

October 16, 2017

ZOBEL, S.D.J.

Plaintiff Antonio Burgo, Jr.[2] appeals from a final decision by the Acting Commissioner of Social Security ("the Commissioner") upholding the ruling of the Administrative Law Judge ("ALJ") that rejected his application for Supplemental Security Income ("SSI"). Plaintiff contends that the ALJ erred in omitting both a physical and a mental limitation from his residual functional capacity ("RFC") assessment, and in failing to give appropriate weight to the opinion of plaintiff's treating psychiatrist.

I.   Background

Plaintiff filed an application for SSI on November 15, 2013, alleging disability beginning on September 3, 2011. His claim was first denied on January 23, 2014, and

---

[1]   Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill has been substituted for Carolyn W. Colvin as Acting Commissioner of the Social Security Administration.

[2]   Although the case caption omits the plaintiff's "Jr." suffix, I adopt it here because both the parties and administrative record include it consistently.

again upon reconsideration on May 27, 2014. Plaintiff requested a hearing before an ALJ, and a hearing at which the plaintiff and a vocational expert ("VE") testified was held on May 26, 2015.

## A.     Applicable Statutes and Regulations

To receive SSI benefits, a claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment "must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 1382c(a)(3)(B); see also 20 C.F.R. § 416.905(a).

The ALJ analyzes whether a claimant is disabled using an established "five-step sequential evaluation process." See 20 C.F.R.§ 416.920(a)(4)(i)–(v). Under this framework, the ALJ first determines whether the claimant is currently engaging in substantial gainful work activity. If not, then at step two, the ALJ decides whether the claimant has a "severe" medical impairment or impairments, which means an impairment that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. § 416.920(c). If the claimant has a severe impairment or impairments, the ALJ considers third whether the impairment or impairments meets or equals an entry in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and meets the duration requirement. If so, then the claimant is considered disabled.

If not, the ALJ must determine the claimant's RFC, which is "the most [a claimant] can still do despite [his] limitations," 20 C.F.R. § 416.945(a)(1). The ALJ then moves to step four and determines whether the claimant's RFC allows him to perform his past relevant work. If the claimant has the RFC to perform his past relevant work, then he is not disabled. If the claimant does not, the ALJ decides, at step five, whether the claimant can do other work in light of his RFC, age, education, and work experience. If the claimant can, he is not considered disabled; otherwise, he is. "Once the applicant has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); see also 20 C.F.R. §§ 416.912(b)(3), 416.960(c)(2).

    B.    **The Initial Rejection and the ALJ's Decision**

In a July 10, 2015, written decision, structured around the five-step sequential evaluation process, the ALJ found plaintiff was not disabled under the Social Security Act. At the first step, he determined that plaintiff had not engaged in substantial gainful activity since November 15, 2013, the date on which he filed his SSI application. Next, at step two, he found that plaintiff has the following severe impairments: ligament reconstruction and tendon interposition of the left thumb capo-metacarpal joint, mild compression deformity at T8 in the back, cervical and thoracic pain, depression, bipolar disorder, anxiety, and substance addiction disorder. See 20 C.F.R. § 404.1520(c). At step three, the ALJ nonetheless ruled that plaintiff "does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R.[3] at 18. Before moving to step four, the ALJ determined plaintiff's RFC:

> After careful consideration of the entire record, I find that the claimant has the following residual functional capacity: he could lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk for 6 hours; sit for 6 hours; occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; and occasionally balance stoop, kneel, crouch, and crawl. Further, work is limited to simple tasks; he could sustain attention and pace on simple tasks for 2 hours at a time over an 8-hour day, 40-hour week or equivalent work schedule with customary breaks; could adapt to occasional minor changes in work routines; and he could interact appropriately with coworkers and supervisors.

Id. at 20. The ALJ explained that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and that he "also considered opinion evidence" in accordance with the Social Security regulations. Id. He ultimately concluded that although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Id. at 21.

At the fourth step, the ALJ concluded that the plaintiff has no past relevant work. Finally, at step five, the ALJ determined, based on the VE's testimony, "that, considering the claimant's age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id. at 29. The VE testified that the claimant could perform

---

[3] "R." refers to the Social Security administrative record, which was filed in this appeal at Docket No. 13.

4

representative occupations such as cafeteria attendant, cleaner/housekeeper, and price ticket marker.  Accordingly, the ALJ concluded that the claimant was not disabled.

### C. The Appeal

Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council, which denied review on July 28, 2016.  The ALJ's decision then became the final decision of the Commissioner, and plaintiff brought this case under 42 U.S.C. § 405(g), seeking reversal thereof.

## II. Standard of Review

The Commissioner's findings of fact are conclusive if based on the correct legal standard and supported by substantial evidence.  42 U.S.C. § 405(g); Seavey, 276 F.3d at 9.  Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  So long as the Commissioner's determinations are supported by substantial evidence, they must be affirmed, "even if the record arguably could justify a different conclusion."  Rodriguez Pagan v. Sec'y Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).  Further, resolving credibility issues "and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]."  Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (quoting Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)).  Questions of law are reviewed de novo.  Seavey, 276 F.3d at 9.

## III. Discussion

In support of his motion to reverse the Commissioner's decision, plaintiff argues that the ALJ erred in omitting both a physical and a mental limitation from the RFC assessment, namely, restrictions in plaintiff's use of his left hand and limitations in his social functioning. He further urges that neither error was harmless where an RFC assessment including either of these limitations – and certainly both in combination – would have precluded the jobs identified at the fifth step of the ALJ's analysis.

### A.     Omission of Physical Impairment (Left Hand Restrictions) from RFC

Plaintiff contends that the evidence amply supported his claim of left-hand impairment. He points to his testimony that he experiences pain in his left hand, wears a left thumb brace, has no motion in his left thumb joint, and cannot grasp anything with that thumb or hand. R. at 21. He also cites to medical records of orthopedic surgeon Dr. Marvin Rosen, who noted multiple sources of arthritis in plaintiff's left hand and wrist. R. at 400. Based on this evidence, plaintiff argues the ALJ was required to include the left-hand limitations in the RFC assessment when posing hypotheticals to the VE.

Although an ALJ must consider a claimant's subjective allegations of pain and functional limitations, he is "not required to accept those allegations at face value and may reject them where they are unsupported by the medical evidence, treatment history, and activities of daily living." See Perusse v. Astrue, No. 10-30065, 2011 WL 1870590, at *5 (D. Mass. Apr. 25, 2011). Here, the ALJ did consider plaintiff's testimony and the medical evidence regarding his left hand and wrist. R. at 25. The medical record, however, also includes post-operative notes by Dr. Rosen, who

6

indicated that plaintiff was "doing quite well [and] a lot of his pain has resolved," R. at 401, and noted that plaintiff could "touch the tip of the thumb to the small finger." R. at 400. Finally, the ALJ's statement that the medical record did not contain "further documented treatment or follow-up for the left thumb," R. at 23, fully supports his decision to omit any left hand restriction from plaintiff's RFC assessment.

## B. Omission of Mental Impairment (Social Functioning Limitations) from RFC

Plaintiff similarly argues that the ALJ erred in omitting his social functioning limitations from the RFC assessment. He contends first that this omission cannot be supported by substantial evidence where "all of the medical records and medical opinion evidence supports some limitations [in social interactions]." Docket # 17, at 14. He additionally contends that the RFC assessment would have included a social restriction if the ALJ had appropriately given controlling weight to the opinion of plaintiff's treating psychiatrist.

### 1. Consideration of Impairment Evidence

Despite plaintiff's contentions, the ALJ did acknowledge plaintiff's limitations in social functioning. See R. at 26–28 (reviewing medical evidence of plaintiff's mental impairments, and finding that plaintiff had moderate limitations in social functioning). He nevertheless gave "great weight" to the assessments of state agency psychological consultants Drs. Kellerman and Shestopal,[4] R. at 27-28, who concluded that despite moderate social limitations, plaintiff was "able to manage appropriate, superficial,

---

[4] In so doing, he noted that "findings of fact made by state agency medical professionals regarding the nature and severity of and individual's impairments must be treated as expert opinion evidence by a non-examining source in the absence of other fully credible medical opinions (SSR 96-6p)." R. 28. See C.F.R. §§ 404.1513a(b)(1).

interpersonal interactions." R. at 190, 205-06. Their conclusion is consistent with evidence cited by plaintiff, which confirms the existence of social limitations but not the impact of those limitations on his ability to work.

The ALJ was also entitled not to fully credit plaintiff's statements concerning the intensity, persistence, and limiting effects of his impaired social functioning. He noted that plaintiff "attends church on Sundays as well as AA meetings six times a week, reported performing odd jobs in October 2012, uses public transportation without difficulty, goes to the library and reads the newspaper on a daily basis, prepares meals, performs chores, visits with his mother weekly, sees his grandchildren often, and takes walks." R. at 26. See Teixeira v. Astrue, 755 F. Supp. 2d 340, 347 (D. Mass. 2010) ("While a claimant's performance of household chores or the like ought not be equated to an ability to participate effectively in the workforce, evidence of daily activities can be used to support a negative credibility finding.")

Accordingly, the ALJ's RFC assessment, including his finding that plaintiff "could interact appropriately with coworkers and supervisors," R. at 20, was supported by substantial evidence. See Rodriguez, 647 F.2d at 222 (Commissioner's findings must be upheld so long as "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion.").

**2.    Weight Accorded to Treating Source's Opinion of Social Functioning**

Plaintiff argues that the ALJ's omission of a social functioning limitation from the RFC assessment was also erroneous because, under the "treating physician rule," he was required to give controlling weight to the opinion of plaintiff's treating psychiatrist

8

Dr. Ying Wang. Dr. Wang opined that plaintiff's "mood lability and irritability may adversely impact his ability to interact socially." R. at 575. Where the ALJ gave only "some weight" to this view, R. at 28, plaintiff contends that the ALJ was required to justify his decision using factors prescribed by regulation. Docket # 17, at 16 (citing 20 C.F.R. 404.1527(c)).

However, "[t]he law in this circuit does not require the ALJ to give greater weight to the opinions of treating physicians." Hagan v. Colvin, 52 F. Supp.3d 167, 174 (D. Mass. 2014)(quoting Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991). The "treating physician rule" on which plaintiff relies provides that, generally, an ALJ will give "greater weight to a treating source opinion because they are likely able to provide 'a detailed, longitudinal picture of' the claimant's medical impairment, and their opinions benefit from a unique perspective unshared by 'objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" Murphy v. Colvin, No.15-11548, 2016 WL 5402184, at *13 (D. Mass. Sept. 27, 2016) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). In the absence of that justification, however, a treating source opinion is not automatically entitled to controlling weight. See 20 C.F.R. § 404.1527(c)(2); see also Castro v. Barnhart, 198 F.Supp.2d 47, 54 (D. Mass. 2002).

"When attributing less than controlling weight to a treating source's opinion, the only constraint is that the ALJ must 'give good reasons' for his decision based on consideration of: (1) the length, frequency, nature, and extent of the treatment relationship; (2) the supportability of the opinion; (3) the consistency of the opinion with

the record as a whole; (4) the treating physician's specialization in the relevant area of medicine; and (5) other factors brought to the ALJ's attention." Murphy, 2016 WL 5402184, at *13 (citing 20 C.F.R. §§ 402.1527(c)(2)–(6), 416.927(c)(2)–(6)).

Here, although the ALJ should have made more express reference to these factors, his decision is consistent with them. See Bourinot v. Colvin, 95 F. Supp.3d 161, 177 (D. Mass. 2015) (remand not required where it can be ascertained from the entire record and the ALJ's opinion that the ALJ applied the substance of the treating physician rule). The ALJ explained his consideration of Dr. Wang's opinion as follows:

> The questionnaire and report are given some weight as they note mild to moderate symptoms and impairment consistent with the medical evidence and the record as a whole. However, they do not offer a definitive opinion as to the extent that his impairments would impose limitations on his abilities other than just stating that they may adversely impact his functioning.

R. at 28. Dr. Wang specialized in psychiatry, and as discussed above, the ALJ adopted her view of plaintiff's limitations in social functioning. See R. at 19. But where Dr. Wang offered no opinion as to how those limitations would impact plaintiff's ability to work, the RFC assessment need not have included a social functioning limitation even if the ALJ had afforded controlling weight to Dr. Wang's opinion.

Furthermore, Dr. Wang's opinion lacks the longitudinal context that warrants controlling weight generally accorded to treating sources. Her treatment of plaintiff began on April 29, 2014, and occurred "every 1-2 months," such that her report dated July 17, 2014 was based on only one or two visits with plaintiff.[5] R. at 573. The ALJ

---
[5] The treatment was also short-lived: Dr. Wang transferred psychiatric care of the plaintiff back to Dr. Yeung on October 2, 2014. R. at 651-52. Dr. Yeung, another treating psychiatrist whose opinion the ALJ gave "some weight," R. 27, anticipated in January, 2014, that plaintiff might have trouble getting along with others "due to mood swings." R. 537. In May, 2014, Dr. Yeung described plaintiff as "restless, moody, and impulsive," and characterized his social functioning as "not great, has not worked

10

thus did not err in giving only "some weight" to Dr. Wang's opinion.  See 20 C.F.R. § 404.1527(c)(2); see also Curley v. Comm'r of Soc. Sec., No. 16-11240, 2017 WL 2624225, at *13 (D. Mass. May 30, 2017), report and recommendation adopted, No. 16-11240, 2017 WL 2622745 (D. Mass. June 16, 2017) (ALJ did not err in according little weight to opinion of treating psychiatrist who saw claimant only once); Murphy, 2016 WL 5402184, at *13 ("Dr. Burke saw Murphy only once . . . As a result, Dr. Burke's consulting opinion lacked the unique depth and perspective which warrants the assignation [sic] of greater weight to his opinion.  Accordingly, ALJ Evans was not constrained by the 'Treating Physician Rule' and properly determined what weight to attribute Dr. Burke's opinion based on his analysis of the record as a whole."); cf. Hagan, 52 F. Supp.3d at 174–75 (ALJ erred in failing to explain why treating psychiatrist's opinion, if not entitled to controlling weight, was given little weight, where treating psychiatrist had seen claimant eleven times prior to giving opinion and sources of inconsistent evidence saw the claimant once or not at all).

## IV. Conclusion

---

[for over a year]."  R. 542-43.  The ALJ accorded Dr. Yeung's opinion "some weight" because it was "suggestive of moderately rated symptoms and limitations consistent with the medical evidence and the record as a whole.  However, the majority of the forms are not complete due to inadequate information and thus the forms are only given some weight."  R.27.  Although plaintiff does not challenge the ALJ's consideration of Dr. Yeung's opinion in light of the treating physician rule, I nonetheless note that treating source opinions not adequately explained or supported do not command controlling weight.  See Coggon v. Barnhart, 354 F. Supp. 2d 40, 51-52 (D. Mass. 2005) (citing to 20 C.F.R. § 404.1527(d)(2) for proposition that treating source opinions warrant controlling weight if well-supported by medically acceptable clinical evidence).  Unlike the incomplete forms submitted by Dr. Yeung, the state agency psychological assessments to which the ALJ gave great weight detailed the findings of fact and medical evidence analyzed in making plaintiff's RFC determination.  R. 180-192, 195-209.  Cf. Arroyo v. Barnhart, 295 F Supp. 2d 214, 221-22 (D. Mass. 2003)(ALJ erred in giving little weight to treating source opinion he characterized as inadequately supported or explained where state agency reports to which he gave controlling weight were substantially similar).

Plaintiff's Motion to Reverse or Remand the Decision of Commissioner (Docket # 16) is DENIED, and Defendant's Motion for Order Affirming the Decision of the Commissioner (Docket # 20) is ALLOWED.

Judgment may be entered affirming the decision of the Commissioner.

　__October 16, 2017___　　　　　　　　　　_____/s/Rya W. Zobel_____
　　　　　DATE　　　　　　　　　　　　　　　　　　　　RYA W. ZOBEL
　　　　　　　　　　　　　　　　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE